COMPLAINT

Plaintiff Pro Se
LJILJANA SEGEDIN, AT-3730 EGGENBURG,
HORNERSTRASSE 2/8.,
REPUBLIC AUSTRIA EU
ll.legal.washington@gmail.com
004306607211027

Case: 1:26–cv–02046
Assigned To : McFadden, Trevor N.
Assign. Date : 6/5/2026
Description: Pro Se Gen. Civ.      (F-Deck)

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

Case No.: _____

LJILJANA SEGEDIN,

Individually, as a recognized U.S. Co-Investor;

and as the Surviving Business Partner protecting

the joint commercial investments & partnership

capital held with JOHN S. HOPPER (Deceased

Co-Investor and recognized U.S. Investor),

        Plaintiff,


        vs.

        REPUBLIC OF CROATIA,
REPRESENTED BY THE MINISTRY OF JUSTICE,
PUBLIC ADMINISTRATION AND DIGITAL
TRANSFORMATION
Service for International Legal Assistance and
Judicial Cooperation in Civil Matters,
Ulica grada Vukovara 49. , 10000 Zagreb,
Croatia EU

        Defendant

COMPLAINT

RECOVERY OF LAWFUL CONCEDED

LIQUIDATEDDEBT

28U.S.C.§1331

28U.S.C.§ 1605(a)(1)

28 U.S.C. § 1605(a)(2)28 U.S.C. § 1605(a)(3)

28 U.S.C. § 1605(a)(5)

Fed. R. Evid. 902

Fed. R. Civ. P. 44.1

(28 U.S.C. § 1605(a)(3)),

FIXED DEBT TOTAL: $2,222,151,876.24

(two billion, two hundred twenty-two million,

one hundred fifty-one thousand, eight hundred

seventy-six dollars and twenty-four cents)

**RECEIVED**
MAILROOM

JUN - 5 2026

Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

1

COMPLAINT

## JURISDICTION AND VENUE

The Plaintiff, Ljiljana Segedin, appearing pro se before this Honourable United States Federal Court, respectfully files this Complaint against the Defendant, the Republic of Croatia, and alleges as follows: Subject-Matter Jurisdiction: Pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1331, this Court has jurisdiction over a foreign state and a U.S. capital nexus for a fixed liquidated debt of $$2,222,151,876.24 (two billion, two hundred twenty-two million, one hundred fifty-one thousand, eight hundred seventy-six dollars and twenty-four cents).

Treaty Waiver: Pursuant to 28 U.S.C. § 1605(a)(1), Defendant waived its sovereign immunity through the 1996 U.S.-Croatia Bilateral Investment Treaty (BIT). Statutory Exceptions: Defendant's sovereign immunity is pierced under the following FSIA exceptions:

28 U.S.C. § 1605(a)(3): Unlawful expropriation and liquidation of corporate assets via fraudulent in absentia proceedings.

28 U.S.C. § 1605(a)(2): Continuous commercial real estate marketing and asset liquidation as a market participant.

28 U.S.C. § 1605(a)(5): Intentional non-commercial tortious acts causing personal injury and property damage. Jurisdiction is also invoked pursuant to 28 U.S.C. § 1605(a)(5) in conjunction with 28 U.S.C. § 1605(a)(3). The Plaintiff clarifies that the non-commercial torts, including institutional coercion, intentional infliction of emotional distress, and state-sponsored intimidation documented under U.S. criminal law analogues (RICO, 18 U.S.C. § 844(i) - Arson, and 18 U.S.C. § 2332f - Bombings), were explicitly deployed by the Defendant as the operational mechanisms and direct instruments to execute the unlawful expropriation of the Plaintiff's permanent capital and majority creditor rights. The extraterritorial conduct of the

2

COMPLAINT

Defendant caused a direct, catastrophic economic effect inside the United States, paralyzing a $$2,222,151,876.24 asset configuration originating from U.S. source partnership capital.

Embassy seal pursuant to Federal Rules of Evidence 902(3) and 902(8).

Admission of Liability: Certified tables were served upon Defendant's Ministry of Justice. Defendant's failure to answer establishes these figures as unrebutted material facts under 28 U.S.C. § 1608(e).

Venue: Venue is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1391(f)(4).

COUNT I – UNLAWFUL EXPROPRIATION (28 U.S.C. § 1605(a)(3))

Plaintiff realleges and incorporates all preceding paragraphs.

Defendant is not entitled to immunity because this action involves property and permanent foreign capital taken in gross violation of international law. Assets were seized without public purpose, discriminatorily, and without just compensation. Expropriation relied on fabricated judicial records, manufactured dockets, and fraudulent in absentia proceedings conducted in total secrecy via intentional address falsification. The state-appointed bankruptcy trustee deployed physical violence and an unlawful break-in to forcibly seize possession of the Plaintiff's premium real estate assets. Furthermore, the state-appointed bankruptcy trustee entirely lacked the mandatory statutory license and lawful regulatory authority required to administer corporate entities and asset portfolios of this high financial value. Consequently, the assets remain under the unlicenced, illegal, and absolute physical control of the state-appointed bankruptcy trustee.

3

The baseline asset value of $12,000,000.00 is established by certified property valuations and expert appraisals 6. The baseline physical asset value of the permanent capital was initially established at $8,680,000 USD (€7,000,000 EUR) upon formation, expanding to an official valuation of $14,351,000 USD (€12,700,000 EUR) by 2017; however, upon the Plaintiff's total tax de-registration from the Republic of Croatia in 2017 and her subsequent official, legal registration within the Federal Ministry for European and International Affairs (BMEIA) of the Republic of Austria, any lawful sovereign jurisdiction to appraise or regulate this capital structure transferred exclusively to the Republic of Austria. Because international and European real estate market values have continuously and aggressively increased since the Plaintiff's 2017 relocation, the true valuation of this portfolio under applicable Western standards has compounding growth exceeding $43,000,000 USD (three times the 2017 baseline). The Defendant intentionally ignored this strict international boundary, deploying a fabricated domestic execution apparatus to liquidate a rapidly appreciating foreign-held asset pool, utilizing this compounding real estate value as the direct, hostile commercial motive for its predatory institutional attack.

Defendant is actively leasing, advertising, and marketing this property for public auction.

Plaintiff was permanently deprived of U.S.-sourced investment capital and property rights. Plaintiff suffered severe economic damages estimated at no less than $43,000,000.00 USD for physical assets, additional damages arising from a final adjudicated judgment against the state valued at $38,000,000.00 USD, and a commercial debt reaching over $200,000,000.00 USD with compounding interest stemming strictly from disrupted business activities, altogether forming a core component of the total non-rebutted liquidated debt of $$2,222,151,876.24 USD.

4

## COUNT II – CONTINUING COMMERCIAL ACTIVITY (28 U.S.C. § 1605(a)(2))

Plaintiff realleges and incorporates all preceding paragraphs.

Defendant is not entitled to immunity due to commercial activity causing a direct effect in the United States. Under the nature-of-the-act test, Defendant acts as a commercial market participant through its Commercial Court and bankruptcy trustee.

Defendant's commercial liquidation and commercial real estate management are continuous, active, and ongoing. The trustee engages in routine commercial real estate leasing, maintenance, and advertising identical to a private firm. By acting as a market participant to liquidate private enterprises, the foreign state strips itself of sovereign character. This commercial exploitation disrupted the repatriation of capital destined for Plaintiff's U.S. bank accounts.

Plaintiff suffered severe economic injuries estimated at no less than $ $43,000,000.00, substantiated by official property valuations, plus interest and fees. This commercial disruption directly triggered the forced, non-discretionary liquidation of U.S. domestic corporate stock and partnership equities, directly altering and damaging asset configurations held within the United States financial system.

## COUNT III – NON-COMMERCIAL TORTIOUS ACTS: TRANSNATIONAL RACKETEERING (28 U.S.C. § 1605(a)(5))

Plaintiff realleges and incorporates all preceding paragraphs. Defendant is not entitled to immunity for property damage, personal injury, and severe emotional distress caused by state agents. State officials and law enforcement colluded with criminal elements, converting administrative power into transnational extortion.

5

Inextricable RICO Nexus: The Court is formally directed to the Civil RICO Act (18 U.S.C. §§ 1961, 1962) and Federal Wire and Mail Fraud statutes (18 U.S.C. §§ 1341, 1343) strictly to evaluate a continuous, indivisible pattern of racketeering and public corruption. This patterned violation of law forms the direct, inseparable predicate that caused severe existential and compounding financial injuries. To exclude Plaintiff and halt her defence, state-permitted actors deployed tactical coercion, including:

Targeted Arson and Explosive Devices: Physical destruction of commercial infrastructure to intimidate Plaintiff.

Weaponized Containment of Family Members: Institutional harassment of family members used as leverage for extortion.

Immediate Threat of Unlawful Arrest: Fabricated criminal threats designed to force asset abandonment. These intentional, non-discretionary torts directly destroyed a protected U.S. commercial investment and caused severe injury. Plaintiff is entitled to damages to be determined at trial, forming part of the cumulative, non-rebutted liquidated state debt totalling $$2,222,151,876.24 (two billion, two hundred twenty-two million, one hundred fifty-one thousand, eight hundred seventy-six dollars and twenty-four cents) , plus punitive damages and costs.

Consistent with the jurisdictional integration set forth herein, the non-commercial tortious acts enumerated under this Count are presented strictly as the indivisible coercive instruments used by the Defendant to finalize the unlawful expropriation under Section 1605(a)(3), thereby causing a direct, catastrophic economic destruction of U.S.-linked partnership capital within the United States.

6

PARTIES

THE SOLE PLAINTIFF:

LJILJANA SEGEDIN, Proceeding Pro Se

HORNERSTRASSE 2/8, AT-3730 EGGENBURG,

REPUBLIC OF AUSTRIA, EUROPE.

The Plaintiff, LJILJANA SEGEDIN, brings this action strictly in her own name as the sole active party to this record, acting:

INDIVIDUALLY, as a recognized U.S. Co-Investor,

direct victim of institutional racketeering, and survivor of life-threatening physical coercion;

as the surviving business partner protecting the joint commercial investments, operational funding, and partnership capital held with JOHN S. HOPPER (Deceased Co-Investor, likewise,

a recognized U.S. Investor), arising from their documented joint accounts and co-investment venture; and

INDIVIDUALLY, to recover direct damages for severe emotional distress, intentional trauma, financial ruin, and the extreme duress caused by the Defendant's targeted physical and institutional violence directed against her household, including the weaponized targeting and direct endangerment of her then-minor children, NADJA THEA SEGEDIN SCHMITT and ANTHONY MARIO HOPPER, which was executed as a mechanism of

7

COMPLAINT

coercion to destroy the Plaintiff's investment and force her flight from the jurisdiction.

DEFENDANT:

REPUBLIC OF CROATIA,

REPRESENTED BY THE MINISTRY OF JUSTICE,

PUBLIC ADMINISTRATION AND DIGITAL TRANSFORMATION

SERVICE FOR INTERNATIONAL LEGAL ASSISTANCE AND JUDICIAL

COOPERATION IN CIVIL MATTERS,

ULICA GRADA VUKOVARA 49. , 10000 ZAGREB, CROATIA EU

REQUEST REGARDING METHOD OF TRIALTRIPARTITE ACTION MODULES I, II, III

(Declaratory Legal Protection – Recovery of Conceded Debt – Abuse of Procedure, with Request for Partial Judgments) Demand for Trial to the Court (Bench Trial): The Plaintiff hereby respectfully requests that all issues in this case, including liability, the adjudication of the conceded liquidated debt, and civil damages, be tried directly before the Court as a non-jury civil action pursuant to the mandatory statutory framework of 28 U.S.C. § 1330(a). The Plaintiff requests that the Court allow formal evidentiary proceedings, including the examination of witnesses, the formal presentation of verified documents, and all other procedural protections to ensure a fair and full determination of all claims. Evidentiary Substantiation of the Tripartite Action Modules: The factual and financial components of this Tripartite Action are organized into three distinct operational Modules, each fully backed by self-authenticating, conclusive evidence compiled by a U.S. Notary Public and formally certified under the official seal of the United States Embassy pursuant to Federal Rule of Evidence 902:

MODULE I [Declaratory Legal Protection & Fraud]: Covering systematic institutional fraud, public corruption, and illegal asset stripping. Backed by certified ledger entries proving the U.S. origin of the protected capital.

MODULE II [Recovery of Lawful Conceded Liquidated Debt]: Backed by the itemized damage calculation tables served upon the Defendant's Ministry and local judges, which stand as non-disputed and conceded facts due to the Defendant's total silence and willful default under 28 U.S.C. § 1608(e).

9

MODULE III [Abuse of Procedure & Institutional Duress]: Covering the extraterritorial abuses of authority, in absentia proceedings, and physical racketeering violence. Backed by authenticated records, police logs, and emergency notifications regarding the physical destruction of property and life-threatening intimidation.

EXHIBIT: U.S. EMBASSY CERTIFIED FINANCIAL LEDGERS AND NOTARIAL CALCULATIONS. The Scope of Judicial Determination and Mandate for Payment: The Plaintiff explicitly clarifies that this action does not seek the re-litigation or re-adjudication of the underlying merits, as the Defendant's multi-billion-dollar liability has already been contractually and administratively fixed. The Defendant was repeatedly, formally, and properly warned over a period of years, possessed full documented knowledge that the co-investors operated under protected U.S. status, and intentionally executed targeted injury against the investment.

By maintaining absolute non-responsiveness and a total failure to dispute the U.S. Embassy certified financial tables served upon its Ministry, the Defendant legally conceded the valuation, operating as a binding admission of liability through silence pursuant to 28 U.S.C. § 1608(e). Instead of delivering legal recourse, the Defendant responded with further extraterritorial repression, fabricated in absentia judgments, and corrupted the local administration by injecting a known criminal enterprise into the proceedings as fraudulent creditors to absorb the assets. Consequently, the mandate and scope of this Court is strictly limited to confirming three objective, verifiable parameters: First: Whether the Defendant's Ministry of Justice and local judges formally received the itemized damage claims and certified financial tables;

COMPLAINT

Second: Whether the Defendant failed to legally dispute or rebut those tables within the statutory timeframe, thereby entering into a permanent default and administrative concession of the debt; and

Third: The immediate enforcement and execution of the final judgment commanding the payment of the pre-determined, liquidated total of $$2,222,151,876.24 (two billion, two hundred twenty-two million, one hundred fifty-one thousand, eight hundred seventy-six dollars and twenty-four cents) plus accrued interest.

4. Factual Declaration of Jurisdictional Absence and Ongoing Duress: The Plaintiff, LJILJANA SEGEDIN, is a natural person, a foreign citizen, and a private investor proceeding pro se. The Plaintiff has not been administratively registered in the Defendant state since July 2016, nor has she resided within the territory of the Defendant since May 2017.

The Plaintiff formally informs this Court that all judgments, lawsuits, and proceedings initiated against her in the Republic of Croatia after January 6, 2016, and May 2017, possess no legal validity or extraterritorial enforceability, as the Plaintiff was no longer under Croatian jurisdiction.

Any subsequent action of the Defendant based on the alleged local existence of the Plaintiff constitutes a severe, bad-faith abuse of procedure. Due to this coordinated institutional abuse, weaponized judicial violence, and ongoing physical duress, the Plaintiff was forced to flee the Defendant state to save her family, leaving behind her commercial property and family assets. The Plaintiff respectfully requests this Court to recognize her right to the full restitution of all assets, comprehensive compensation for material and non-material damages, and the uncompromised protection of her rights.5. U.S. Investor Status and Partnership Capital

Nexus: The Plaintiff, LJILJANA SEGEDIN, is the sole active Plaintiff in this action, proceeding pro se as a private investor whose commercial investments in the Republic of Croatia enjoy absolute protection under the Treaty between the Government of the United States of America and the Government of the Republic of Croatia Concerning the Encouragement and Reciprocal Protection of Investment, signed on July 13, 1996 (the U.S.-Croatia BIT).

The Plaintiff and her late husband, JOHN SANFORD HOPPER, are both recognized and covered U.S. Investors under the explicit terms of the BIT. The subject-matter commercial properties, joint accounts, and business operations were originally established, funded, and operated as a Joint Partnership Investment between the Plaintiff and her late husband, utilizing protected U.S. capital, making the entire economic nexus subject to the exclusive protection of United States federal law and actionable under the federal statutes set forth on the face of this Complaint.

Continuous and Ongoing Nature of State Wrongs and Tolling of Limitations:The Defendant's tortious conduct, institutional harassment, and treaty violations are not isolated historical events, but constitute a continuous and ongoing transnational tort (Continuing Tort Framework). The Defendant, through its State Attorney's Office and local courts, continues to maintain fraudulent records, execute property restrictions, and issue active, unsubstantiated arrest warrants against the Plaintiff up to the present day, specifically calculated to maintain the extortionate campaign and prevent the Plaintiff from accessing legal remedies. Because the unlawful infrastructure and predatory actions are actively continuing as of the filing of this Complaint, the statute of limitations is tolled as a matter of federal law, and the Court possesses full authority to adjudicate the entirety of the historical and ongoing multi-billion-dollar economic injury sustained by the Plaintiff.

## IV. LEGAL STANDING AND STATUTORY NEXUS OF THE INVESTOR

Partnership Capital Nexus and Right of Survivorship: While certain local administrative titles and assets were registered individually under the Plaintiff's name for operational expediency, the underlying commercial capital was continuously provided, transmitted, and subsidized directly from U.S. partnership resources. Following the untimely death of John Sanford Hopper in February 2015, and pursuant to established federal common law doctrines governing partnerships and the Right of Survivorship, all investment claims, treaty protections, and rights to 100% of the damages survived and vested fully, immediately, and exclusively in the Plaintiff.

The Defendant's State Attorney's Office possessed actual, comprehensive, and documented knowledge of the entire criminal enterprise, including the physical beatings, targeted arson, and the 108-day forced institutional kidnapping of the Plaintiff's minor daughter, as well as explicit objections regarding the bankruptcy administrator's lack of a lawful license.

Despite having full knowledge of these egregious violations, the State Attorney's Office willfully refused to investigate or intervene, affirmatively shielded the criminal actors, and intentionally provided total institutional coverage and state authority to weaponize the judicial system and execute the fraudulent liquidation of the protected U.S. partnership capital.

Direct Damages for Family Unit Targeting: The Plaintiff individually maintains full legal standing under United States law to claim distinct, direct damages for the severe emotional trauma and financial ruin caused by the physical and institutional targeting of her household, including the weaponized coercion and retaliatory actions directed against her children, NADJA THEA SEGEDIN SCHMITT (who was a minor at the time of the events) and

13

ANTHONY MARIO HOPPER, executed by the Defendant to destroy the Plaintiff's covered investment. This targeted institutional and physical coercion constitutes a direct violation of Article II of the U.S.-Croatia Bilateral Investment Treaty (BIT), which guarantees protected investors Fair and Equitable Treatment (FET) and Full Protection and Security. By weaponizing the local judiciary, deploying unauthorized bankruptcy administrators under official state coverage, and tolerating severe physical threats against the Plaintiff's family unit, the Defendant actively breached its treaty obligation to refrain from arbitrary and discriminatory measures that impair the management, operation, and security of the covered investment. The physical and psychological pressure executed against the Plaintiff's household was the direct mechanism utilized by state actors to force the capitulation and unlawful expropriation of the U.S. partnership capital. Absolute Pierce of Sovereign Immunity:

The Defendant, REPUBLIC OF CROATIA, as a signatory state to the 1996 U.S.-Croatia BIT, holds no sovereign immunity from lawsuits arising from the unlawful expropriation, institutional fraud, and violation of the rights of protected U.S. investors.

Pursuant to federal law (28 U.S.C. §§ 1330, 1331, 1332(a)(4), 1605(a), and the framework of 18 U.S.C. § 1964(c)), a covered U.S. investor possesses an absolute right to seek full legal remedies, debt recovery, and enforcement before this Court.

Statutory and International Authority to Sue: Pursuant to international law and the governing bilateral frameworks established by the United States, a citizen acting outside their non-resident jurisdiction is fully empowered to initiate enforcement actions regarding interests protected by international investment agreements. The Plaintiff, recognized by the United States as a protected investor and historically issued multiple B1 Business/Investor Visas based strictly on her investor status, is fully entitled to file this action.

14

COMPLAINT

Professional Credentials and Expert Qualifications of the Plaintiff: The Plaintiff is a highly credentialed international professional, operating with maximum clearance, whose background completely refutes any fabricated local allegations. The Plaintiff's professional profile includes:

UK ICO License & Professional Investigator: Registered and licensed in the United Kingdom to conduct complex asset tracing and fraud investigations.

Austrian Ministry of Finance License & Fraud Analyst: Officially licensed and authorized by the Ministry of Finance of the Republic of Austria to operate as a professional Fraud Analyst.

Professional Armaments Clearance: Formally cleared via stringent psychological evaluation and holding an active official license to possess and carry firearms for professional protection purposes in the Republic of Austria.

Aviation Command Clearance: Historically cleared through comprehensive medical and psychological testing as a Helicopter Pilot / Captain in the Republic of Slovenia.

Professional Indemnity: Backed by dual professional corporate liability insurance policies issued by premier financial syndicates in the United Kingdom and Germany.

C    EXHIBIT: U.S. INVESTOR VISAS, CERTIFIED PROFESSIONAL LICENSES, AND INSURANCE BONDS

V. GENERAL FACTS AND CLAIMS FOR DECLARATORY RELIEF FACT

Standardized Evidentiary Paragraph: Institutional Racketeering and Executive Acknowledgement of Judicial Corruption. The ongoing transnational pattern of institutional racketeering, public corruption, and the collection of unlawful debts within the Defendant's

15

administrative and judicial infrastructure is further substantiated by explicit, public acknowledgments from the highest executive authority of the Republic of Croatia. The President of the Republic of Croatia, Zoran Milanović, acting in his official capacity as Head of State, has repeatedly and publicly characterized the ruling political structure—which directly controls and appoints leadership within the Ministry of Justice and the judiciary—as a "criminal organization" and a "criminal gang" [official Facebook Page OF President Zorana Milanovića]. Furthermore, the Executive Head of State has formally denounced June 9, 2021 these state lines for engaging in the systemic falsification of records, institutional abuse, and character assassination aimed at manipulating judicial outcomes Dnevnik.hr. These explicit admissions by the Defendant's own Head of State confirm a chronic, top-down "systemic disorder" Newspaper Večernji.hr – [Izjave o pravosuđu i sistemskom poremećaju ], validating the Plaintiff's claims under the Civil RICO Act that the Defendant's judicial and law enforcement apparatus operates as a coordinated criminal enterprise under colour of official right. Complete Jurisdictional and Administrative Absence: The Plaintiff completely ceased to be administratively present within the territory of the Defendant in July 2016. All formal registrations and administrative presence within the Defendant's state systems—including Social Welfare, the Pension Fund, the Health Insurance System, and any form of legal residence or domicile in the Republic of Croatia—permanently terminated in May 2017.

The Fictitious Administrative Chase and Institutional Forgery: Despite the total and documented absence of administrative status, domicile, or physical presence, the Defendant's state apparatus and local judiciary initiated an unlawful, predatory legal chase. To execute this extortionate campaign, the Defendant constructed a completely fictitious legal

16

existence of the Plaintiff, contrary to official deregistration records and objective reality. The Defendant willfully resurrected her identity in local systems to:

Fraudulently register the Plaintiff as an existing local administrative person;

Arbitrarily generate false financial obligations, manufactured debts, and fake liabilities; and

Initiate, execute, and maintain predatory legal, administrative, and enforcement proceedings in absentia. Injection of a Known Criminal Enterprise into Judicial Proceedings: The Defendant's local judges and ministries actively permitted a known, organized criminal group to falsely present themselves before the local courts as legitimate creditors of the Plaintiff.

In objective reality, these actors were later exposed, accused, and documented as financial criminals engaged in the wholesale fraud and theft of European Union public funds. The local banks within the Republic of Croatia strictly prohibit the closure of personal and commercial accounts if any legitimate debts or active prosecutions exist. The fact that the Plaintiff successfully, lawfully, and completely closed all her bank accounts in 2016 and 2017, transferring her entire legal existence, child custody, and tax residency to the Republic of Austria, stands as absolute proof that she left the Defendant state with zero tax liabilities, zero debts, and zero active prosecutions.

Futility of Local Remedies and Misuse of Work: The continuation of these fraudulent in absentia proceedings resulted in devastating material and non-material damage, compounded by the Defendant's unauthorized, predatory exploitation and misuse of the Plaintiff's copyrighted professional materials, legal analyses, and proprietary intellectual work. There exists a genuine, justiciable, and unresolvable dispute between the parties regarding this manufactured status. Request for Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201–2202:

17

COMPLAINT

Backed by the official immigration and visa documentation compiled during her U.S. Visa B1 renewal processes—wherein the Plaintiff submitted clean criminal background checks, certificates of non-prosecution, and official Tax Administration clearances showing 00.00 USD/EUR liabilities—the Plaintiff respectfully requests this Court to enter a binding Declaratory Judgment ruling that:

a. The Plaintiff did not exist as an administratively registered or taxable person in the Republic of Croatia after July 2016;

b. The Plaintiff was not domiciled, resident, or habitually present within the territory of the Republic of Croatia after May 2017;

c. Any registration, obligation, manufactured debt, judgment, or enforcement proceeding predicated upon the alleged local existence of the Plaintiff after those dates is factually fraudulent, extra-jurisdictional, and void ab initio; and

d. The Defendant's institutional actions were intentionally executed based on a substantially fraudulent, bad-faith presumption of legal presence to sabotage a protected U.S. Partnership Nexus.

⚠ EXHIBIT: official tax clearances, account closure certificates, and u.s. immigration records.

Plaintiff is also professionally acting here and proving before this court fraud, financial fraud, and gross abuse that this court will not have the opportunity to hear in person. Quite justifiably, all three plaintiff have the right to financial compensation before the competent U.S. court because they are victims only because they are covered by a bilateral agreement, and the only way to please mafiosi from the political level is through the abuse of justice. Because

18

then, no one has the right to question these judgments and actions with a written verdict. However, here, by a combination of circumstances and only by God's will, we are talking about the judgments of a state that has no jurisdiction over property, capital, investments, debts, or minors (then my daughter) on a single cent of money that was spent in the Republic of Croatia. About the Defendant factually correct: In Croatia, the ruling party has been convicted of organized crime, while the state has been convicted of war crimes [ICTY/ICC The Hague 1994/1997]. Public appearances for the purpose of glorifying fascism continue to appear. A large number of politicians, including 36 ministers, are in detention or facing charges for the embezzlement of EU funds, demonstrating the depth of corruption and criminal networks within the political leadership. Criminals and criminal groups who are political donors are protected, and the courts legitimize them as creditors and respected gentlemen, while the investor is called and labeled by the courts as everything from mentally disturbed to a serious criminal, in order to discredit them publicly and rob them more easily. Investors are racketeered, their property is blocked, and they are blackmailed by the removing of blockades; bombs are put under their cars, and property is damaged and set on fire. The Plaintiff has evidence for all of this and demands to present it before this Court, as well as for this procedure to be an example to the public of how investors are treated in the Republic of Croatia. Everything is sponsored by European funds in billions. The Plaintiff and her late husband, a U.S. citizen, immigrated to the Republic of Croatia from Hungary, as evidenced by the first 10-year B1 Visa from the U.S. Consulate in Budapest.

We have never acquired domestic funds in the Republic of Croatia. And that was at the invitation of the U.S. Embassy and the Croatian Prime Minister in 1997, stating that the country was safe for investment and that foreigners were under special protection. However, none of this is true. It is a pure deception of a state and an abuse of legal procedures to get the

19

investor stuck in a confusion of lawsuits and processes from which there is no way out. And we were asked for money and money for bribes – which I refused to pay, and I have proof of that, and we can prove it before the court in the evidentiary procedure of the hearing, that is, show the court documents that confirm it . My late husband, a U.S. co-investor, passed away under unexplained circumstances in February 2015, and to this day we have no autopsy report on it. And here I have a suspicion that this is a criminal offense because at that time there was a process of Revision in September 2014 of the case where we sued the Defendant for the damage it caused us by an illegal lawsuit and blockade of capital assets, and we threatened arbitration. Then there was only legal hell and an attack from all sides by the State Attorney's Office, revolted by the loss of the lawsuit and my personal filing of the lawsuit against the Defendant. The Defendant knows that the Plaintiff is legally literate and that she does not need a lawyer who will be easily removed, bribed, or intimidated to lose the dispute or remove evidence. Maybe that's my courage to represent myself in this court on my own, even though I am not legally literate when it comes to U.S. law. That is why I ask the Court to provide me with an independent approach and warnings if I make a mistake, or to give me time to consult with legal entities. For the sake of easier judging and large material, the Plaintiff chose the system of a three-part lawsuit of various damages cases with partial judgments by modules. It is a material loss, non-material loss, and other losses – such as violations of property, alimony, and others confiscated by illegal processes, rights, finances, as well as copyrights.

COMPLAINT

## VI. WAIVER OF PROCEDURAL OBJECTIONS AND ESTOPPEL TO CONTEST FORUM1. ESTOPPEL TO CONTEST JURISDICTION AND ADJUDICATION ON

UNITED STATES TERRITORY:(9 U.S.C. §§ 201–208; 28 U.S.C. § 1608(e); U.S.-Croatia BIT Art. VI) The Defendant foreign state, having full documented notice and formal service of the arbitration and settlement filings, raised absolutely zero objections within the statutory timeframe. Specifically, the Defendant failed to object to the jurisdiction of the arbitration forum, failed to object to the Plaintiff's status as a protected U.S. Co-Investor, failed to object to the status of the other protected family victims (including the late U.S. investor and the children), and failed to object to the itemized financial valuation and debt totals.

By maintaining absolute, willful silence and executing a total default, the Defendant permitted the arbitration process to be formally closed without entering a single rebuttal. Because the Republic of Croatia failed to object to the case being anchored on United States territory, this total procedural non-responsiveness operates as a binding administrative concession and an irrevocable waiver of its right to contest the forum. Consequently, under well-established federal doctrines of Equitable and Promissory Estoppel, this United States District Court stands as the lawful, proper, and contractually conceded choice of forum for the investor, as the Defendant explicitly waived and is now estopped from contesting adjudication on American soil. The Plaintiff formally extended a comprehensive, good-faith invitation to an amicable settlement directly to the Defendant's central Ministry, offering to resolve the entire multi-billion-dollar investment dispute for a fixed, flat-sum total of $1,000,000,000.00 (One Billion USD), completely waiving all accrued interests and statutory penalties evaluated as of the strict reference date of August 1, 2025. The Defendant maliciously ignored this formal offer,

COMPLAINT

demonstrating a bad-faith intent to maximize financial injury. Consequently, the Plaintiff duly filed a formal request for binding international arbitration before the American Arbitration Association / International Centre for Dispute Resolution (AAA/ICDR) on August 8, 2025, in strict accordance with Article VI(2)(c) of the U.S.-Croatia Bilateral Investment Treaty (BIT) and enforceable under Chapter 2 of the Federal Arbitration Act (9 U.S.C. § 201 et seq. ) The Defendant, as a state party, has de facto accepted

UNCITRAL standards through historical application. Yet, it actively refused to comply with the arbitration agreement, refused to confirm service, and refused to cooperate with the administering institutions. Instead, it deliberately initiated parallel domestic proceedings within the Defendant State to block international jurisdiction. This conduct directly violates the internationally recognized principle of competence-competence, the right to independent arbitration, and the absolute prohibition of forum shopping by a sovereign state. Furthermore, by expanding administrative acts into the active arbitration case, the Defendant explicitly violated Article 5 of the UNCITRAL Model Law, which strictly prohibits unauthorized judicial intervention.

VII. APPLICABLE INTERNATIONAL TREATIES AND EVIDENCE OF INVESTMENT1. SYSTEMATIC VIOLATIONS OF INTERNATIONAL LAW AND TREATY INFRASTRUCTURE:

With this application, the Plaintiff points to systematic, individual, and institutional violations of the UNCITRAL Rules, binding international treaties, mandatory norms of international law, and United States Federal laws executed by the Defendant. These unlawful actions have caused the hostile disabling of access to binding international arbitration, the systematic violation of protected investors' rights, and immense material and procedural damage

22

of significant value. The Plaintiff holds the strict status of a "covered investor" pursuant to the Treaty between the Government of the United States of America and the Republic of Croatia Concerning the Encouragement and Reciprocal Protection of Investment (U.S. Treaty Doc. 106-29, 2000).The existence and validity of the underlying commercial investment are indisputably and materially confirmed by the following official evidence: Official Tax, Financial, and Administrative Records: Issued by the competent municipal and central authorities of the Republic of Croatia. Official Diplomatic and Fiscal Certifications: Official tax, banking, and financial documents executed within the Republic of Austria. Written Institutional Concessions: Official letters, receipts, and written confirmations from Croatian state authorities explicitly confirming the receipt, origin, and lawful registration of the incoming foreign capital resources. Despite these clear, documented facts, the central and judicial authorities of the Republic of Croatia have intentionally: Refused to recognize the valid selection of the International Arbitration Forum (specifically the American Arbitration Association / International Centre for Dispute Resolution [AAA/ICDR] under the UNCITRAL rules); Completely ignored, turned a deaf ear, and refused to respond to the formally filed request for international arbitration; Restricted, sabotaged, and blocked physical and legal access to international legal remedies and direct communication with international arbitration bodies; Adopted arbitrary decisions denying the investor lawful access to the deployed invested capital, accounts, and vital corporate legal documentation; and Deliberately ignored several official submissions, legal letters, and urgent requests for institutional comment. By executing and permitting these predatory actions, the Defendant      foreign state has directly and cumulatively violated: The UNCITRAL Model Law on International Commercial Arbitration (1985, as amended in 2006);The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1958);The Bilateral

23

Investment Treaty (BIT) executed between the United States of America and the Republic of Croatia (1996/2000);The Constitution of the Republic of Croatia (specifically Article 141, which mandates that international agreements override domestic law);The Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–1611 et seq.; and Fundamental principles of customary international law regarding the absolute prohibition of uncompensated expropriation, the right to a fair and neutral trial, and uncompromised access to international justice.

## VIII. CONSEQUENCES AND INTERNATIONAL RESPONSIBILITY

The specific injuries and systematic treaty breaches described in this report result in the direct international legal, material, and financial responsibility of the Defendant foreign state for the total destruction of the investment's economic value and the deliberate, bad-faith denial of legal protection to a covered U.S. investor.

Note on Evidence: All of the above allegations, statutory defaults, and fixed debt valuations are fully supported by extensive, authentic, and self-authenticating documentation, including: Comprehensive corporate, tax, financial, and local court files; Official institutional letters and written notices from the Government of the Republic of Croatia and international administering bodies; Certified registration records and bank proofs of capital entry and U.S.-sourced wire transmissions; Official AAA/ICDR certificates and procedural documentation confirming the arbitration case filed and closed; and Certified legal opinions and relevant extracts from federal and international legislation. The entirety of the evidence is formally classified as [Exhibit _A ; C , F_ ] and is held ready for formal submission and review before this Court.

24

CHRONOLOGICAL LIST OF TERROR EVENTS

IX. CHRONOLOGICAL HISTORY OF EVENTS AND PREDICATE ACTS

1997: Initial Entry of Foreign Capital and Establishment of the Covered Investment October 1997 - Inception of Investment and Entry of Capital: In strict accordance with the formal invitations extended by the United States Embassy and the Croatian Prime Minister, the co-investors officially relocated to the Republic of Croatia from Hungary to establish their joint venture. The Co-Investor JOHN SANFORD HOPPER entered as a United States citizen who held a valid official business visa in Hungary, and the Plaintiff, LJILJANA SEGEDIN, entered as a Croatian citizen who held full official business residency and visa in Hungary. Neither investor possessed pre-existing local bank accounts, domestic funds, or any form of local commercial revenue within the Republic of Croatia. The entirety of the capital was generated outside of Croatia and was provided, transmitted, and subsidized strictly from external resources and their joint international bank accounts. Because the funding originated entirely outside the host state and was tied to a U.S. citizen partner through joint accounts, the entire capital nexus holds the absolute status of a covered foreign investment under the 1996 U.S.- Croatia Bilateral Investment Treaty, regardless of the Plaintiff's domestic citizenship.

Upon their relocation in October 1997, the investors executed their first major commercial deployment of this protected capital by finalizing the outright purchase of their first commercial property, which was a large-scale real estate asset specifically designated and structured for commercial tourist operations, for an exact, verified purchase price of approximately $700,000.00 USD. This foundational transaction was fully funded via the direct

COMPLAINT

wire transmission of external capital from their joint accounts, anchoring the investment under the strict protection of United States federal law and international treaty frameworks.

1997 – 2005: From 1997 to 2005, significant property was purchased for reconstruction into tourist purposes with a total value of 2,000,000 USD.

1998 – 2014: Significant funds were invested in documentation, plans, permits, and reconstruction.

2004: Private capital of real estate assets was invested in the value of 8,615,262.27 USD [52,000,000 HRK], under certain conditions of private ownership as shares.

1998 - Violent Physical Assault, Judicial Theft of Land, and State Collusion: A violent adjacent neighbour committed a brutal physical assault and battery against the principal U.S. investor, John S. Hopper, directly on the private property of the investment. Local law enforcement and the state attorney's office willfully ignored direct video surveillance recordings and completely refused to prosecute the perpetrator. Instead of providing legal protection to the covered investors, corrupt domestic courts subsequently and unlawfully awarded a 720-square-meter parcel of land, measuring approximately 7,750 square feet, directly to the attackers. This specific land had been properly and lawfully purchased by the investors from the rightful owner, but the local judiciary forcefully and fraudulently annexed it to the property of the assailant.

1999 - Destruction and Theft of Corporate Vehicle and Law Enforcement Shielding: A brand-new Porsche vehicle belonging to the investors was targeted, blown up via explosive devices, and subsequently stolen in the municipality of Opatija. Local law enforcement and investigative authorities executed a deliberate, bad-faith obstruction of justice by actively shielding the perpetrators, intentionally suppressing material evidence, and refusing to perform any lawful criminal investigation.

26

2000 - Acquisition of Villa Munz, Fraudulent Administrative Block, and Direct Demand for Bribes: The investors deployed protected capital to purchase the high-value commercial investment property known as "Villa Munz", which was immediately and unilaterally designated a cultural heritage site by local authorities under highly restrictive, conditional sale terms. Following this hostile designation, a State Attorney directly approached the investors and issued an explicit demand for a substantial financial bribe in exchange for lifting the unlawful administrative block placed on the real estate. [case FROM 2010 /P 90/10 36,000,000 $ /of the Commercial Court in Osijek documented an explicit demand from a State Attorney for a bribe to remove an unlawful block on the Villa Munz property title. This official case record serves as written evidence of extortion in the acquisition of the commercial property.]

2002 - Institutional Extortion, Weaponized Threat, and Direct Duress by the President of the Court: The then-President of the Court, who currently occupies the office of Chief Prosecutor, directly confronted the Plaintiff with a corrupt extortion scheme, stating that he possessed the administrative power to remove all ongoing legal blockades and manufactured issues if the Plaintiff "would be good." Based on the perpetrator's explicit facial expressions, menacing tone, and aggressive manner of delivery, the Plaintiff reasonably and immediately understood this statement not as a mere solicitation of a bribe, but as a direct, weaponized personal threat of severe judicial retaliation and physical danger against her household if she refused to comply.

2003: WARNING FROM THE POLICE that our son, a U.S. citizen, is on a kidnapping list of the Petrač family criminal group [found list] sentenced to 15 years in prison for the preparation and intention of kidnapping 10 children of wealthy people, the same persons

27

Petrač appear in 2025 as a business partner of the convicted Croatian Minister of Health for European Union funds fraud [kidnappings using falsified health documents, and as a result, my daughter and I were declared incompetent and insane and targeted to be permanently closed in an asylum, which involved falsified medical documentation generated without our access by the social services in an extra-jurisdictional territory],

2003 - First Targeted Arson of Villa Munz and Permitted Property Destruction: The first targeted act of arson was intentionally committed against the officially protected cultural heritage site and commercial asset known as "Villa Munz", setting the property on fire. This violent incident initiated a continuous, multi-year campaign consisting of countless illegal break-ins, systematic burglaries, and severe physical devastation of the property. Local municipal authorities and law enforcement organs actively permitted this destruction and the burning of the asset by completely refusing to secure the estate, ignoring protective requests, and denying basic policing services to the foreign investors.

2004: Private capital of real estate assets was invested in the value of 8,615,262.27 USD [52,000,000 HRK], under certain conditions of private ownership as shares.

2013 – 2015 - Theft and Fraudulent Erasure of Corporate Registries: Immediately following the untimely death of Co-Investor John S. Hopper, three consecutive years of official corporate records, financial ledgers, and business listings were stolen and completely erased from the host state's official government registries. This administrative manipulation was deliberately executed inside the incorrect city and county jurisdiction, establishing a coordinated falsification by the State Attorney's Office in Rijeka. This fraudulent erasure was carried out despite the fact that perfectly valid, pristine documentation was continuously maintained at the corporate headquarters and filed with the local tax administration throughout those exact years.

COMPLAINT

2015 - Issuance of 10-Year United States B1 Visa and Sovereign Verification of Legal Standing: Concurrently, in 2015, the United States Embassy in Zagreb formally processed, vetted, and approved the Plaintiff's status, officially issuing a new 10-year B1 Business Visa to the Plaintiff as a Croatian citizen. This sovereign administrative act by the United States government—which strictly requires exhaustive international criminal background checks, security vetting, and legal clearances—conclusively verifies and confirms that the Plaintiff maintained an absolute, unblemished legal and criminal record. This official visa issuance serves as irrefutable federal evidence that the Plaintiff was completely clear of any legitimate criminal liabilities, directly exposing and neutralizing the bad-faith character assassination, fraudulent investigations, and manufactured legal blockades orchestrated by the Defendant's corrupt state apparatus during this exact period.

2017 - Territorial Exit from Croatia and Acquisition of Austrian Residency and Work Permits: Facing escalating institutional hostility and severe duress within the host State, the Plaintiff executed a strategic territorial exit from the Republic of Croatia to secure physical safety and legal protection within the Republic of Austria. The Austrian sovereign authorities formally reviewed, approved, and issued official residency, domicile status, and full work authorizations to the Plaintiff. Concurrently, due to the Plaintiff's legal status as the maternal guardian of a minor, the Plaintiff's minor daughter was officially granted matching Austrian residency and legal protections. This cross-border relocation and the immediate issuance of legal immigration status by the Republic of Austria conclusively verifies the unblemished international standing of both the Plaintiff and her dependent, establishing a secure legal haven outside the geographic jurisdiction and weaponized reach of the Defendant's corrupt state apparatus.

2017 - State-Backed Destruction of Property Rights, Fraudulent Revocation of Building Permits, and Title Blockade Against a United States Citizen: In a coordinated escalation of regulatory hostility, an inferior domestic court unilaterally and unlawfully revoked all valid, pre-existing building and construction permits for a high-value commercial tourism property owned directly by the Plaintiff's son, a United States citizen. Simultaneously, the Defendant's administrative organs placed an unlawful blockade on the property's official title registry, falsely claiming that the structure was an illegal construction. The domestic judiciary willfully operated in absolute bad faith by completely ignoring all formally filed legal appeals and deliberately refusing to provide legal notifications or proper service of process to the U.S. investor. This weaponized administrative manipulation of corporate-tourism assets directly violates the 1996 U.S.-Croatia Bilateral Investment Treaty by executing a de facto expropriation without due process, while maintaining a complete judicial blockade and an absolute denial of justice against a United States citizen.

2017 – 2021 - Campaign of Physical Terror, Vandalism, and Character Assassination: The Defendant executed a relentless, state-backed campaign of psychological and physical terror directly targeting the Plaintiff's household. This coordinated harassment comprised continuous law enforcement stalking, the issuance of aggressive police summonses, hostile and groundless interrogations at state borders, targeted physical vandalism including the intentional slashing of the Plaintiff's vehicle tires, and anonymous telephonic threats. Simultaneously, the state apparatus orchestrated a public character assassination campaign through mainstream local newspapers, intentionally spreading fabricated information to publicly destroy the investor's reputation.

30

2019 - Weaponized Media Fabrication and Direct Death Threat: False and malicious information was publicly published across prominent newspapers declaring that the Plaintiff had died. The Plaintiff legally, factually, and rationally interprets this highly coordinated institutional fabrication as a direct, explicit, and weaponized death threat against her physical life, calculated to intimidate her into abandoning her legal claims.

2020 – 2021 - State-Sponsored Kidnapping, Unlawful Institutional Confinement, and Sovereign Sanctuary of the German-Citizen Minor Dependent: Operating through the direct complicity, mobilization, and severe abuse of law enforcement agencies, the Defendant orchestrated the forcible kidnapping of the Plaintiff's minor daughter (born in 2004), who holds valid German citizenship. The dependent child was fraudulently listed as a missing person on two separate occasions and unlawfully detained for a total of 108 days inside psychiatric institutions. This prolonged isolation and unlawful confinement was executed under the arbitrary, extra-judicial order of an unauthorized local state social worker, during which time the child was kept entirely isolated from her family and legal guardians.

In August 2021, while still a minor, the daughter successfully executed a desperate escape from the custody of the Croatian social services, seeking immediate sovereign sanctuary inside the German Embassy in Zagreb, through which she was safely evacuated to the Republic of Austria to reunite with the Plaintiff. As a direct consequence of this severe institutional trauma and forced flight, the minor child was permanently compromised and unlawfully compelled to completely abandon her ongoing formal education.

2021 - Complete Displacement of the Household, Forced Territorial Exit of the United States Citizen Heir, and Total Asset Abandonment Under Sovereign Threat: Driven by an unsustainable, continuous campaign of institutional harassment and severe psychological and

31

COMPLAINT

physical terror, the Plaintiff's son—a United States citizen and legal heir to the investment—was forced to execute a permanent territorial exit from the Republic of Croatia. To preserve his physical safety and escape the immediate dangers posed by the host State's weaponized apparatus, he was compelled to abandon all commercial assets and real estate holdings, seeking immediate refuge and relocation within another European Union member state. This forced flight of the entire family unit definitively establishes the Republic of Croatia as a high-risk, hostile jurisdiction operating in direct violation of international law.

The systematic, unquantifiable succession of predicate acts, institutional abuse, and state-backed extortion permanently destroyed the security of the covered investment, resulting in a total breakdown of the rule of law and the complete, forced exile of United States investors from the host State's territory.

2023 - Coordinated Mass Invasion, Forcible Dispossession, and Total Destruction via Arson: In August 2023, a massive, coordinated physical invasion and violent break-in was carried out across the entire commercial estate, systematically targeting 11 residential structures. The Plaintiff's entire personal property, clothing, vital legal case documents, and lifetime financial assets were intentionally set on fire, burned, and completely destroyed in this massive arson attack.

2023 - Dual Arson Attacks on Villa Munz and Predatory One-Euro Asset Stripping: In August 2023, the officially protected commercial capital investment, "Villa Munz", was intentionally targeted with arson, set on fire, and completely burned twice within the exact same month of the same year. The Brižac estate, which served as our second home within one of the seven residential properties on the site, was intentionally destroyed by arson. All of our personal belongings, an immense collection of valuable fine art, and even the sacred burial urn

32

containing the ashes of the deceased U.S. investor, John S. Hopper, were completely plundered. The individual who forcibly moved onto the property, acting under the direct assistance and authorization of the unlicensed bankruptcy trustee, is a prime criminal suspect, alongside his female partner, in separate grand theft operations involving state-owned lands. This entire illegal invasion, asset theft, and unlawful occupation were explicitly facilitated, protected, and covered up by the State Attorney's Office in Pazin.

-2016 – 2026 - Systematic Judicial Harassment and Financial Exhaustion via Predatory Litigations: From 2016 through May 2026, the Defendant's judicial and administrative branches weaponized the local court systems to initiate and maintain more than 70 fraudulent lawsuits and enforcement proceedings against the Plaintiff and the members of her family. This overwhelming and abusive deployment of parallel domestic litigations possessed no legitimate legal basis and was executed with the single, bad-faith intent to cause total material and financial exhaustion, block access to uncompromised justice, and enforce the permanent deprivation of the protected investment capital.

2020. Institutional Abuse and Kidnapping of a Minor: The Defendant's state-sponsored campaign of coercion included the direct institutional kidnapping and systematic abuse of the Plaintiff's minor daughter by social workers.

This unauthorized state intervention, resulting in 108 days of unlawful psychiatric detention, constituted severe physical and psychological abuse of a minor.

This egregious misconduct was deliberately weaponized by public officials to destroy the family unit, eliminate financial resources, and force the fraudulent expropriation of the Plaintiff's covered investments.

INTEGRATED FACTUAL AND LEGAL RECORD OF STATE-ACKNOWLEDGED LIABILITY

1. Statutory Land Registry Fraud and Title Manipulation Continuous Title Tampering: Municipal Court Land Registry Departments and the State Attorney's Office executed unauthorized, fraudulent title modifications across all investment properties without owner consent. State Financial Asset Siphoning: Following the death of John Hopper [2016/2017], bank funds were siphoned through state institutions while fraudulent bank debts were introduced into judicial records by court experts. Unlawful Registry Blockades & Encumbrances: Courts weaponized predatory liens, manufactured debts, and permanent property freezes to block private individual capital, destroying investment disposal rights. Strict State Liability: Under domestic Land Registration Acts, the Defendant holds absolute financial liability for damages caused by fraudulent land registry entries and judicial asset tampering.

2. Acknowledged Criminal Infrastructure and RICO Categories Kidnapping (18 U.S.C. § 1961(1)(A)): Law enforcement's forced abduction of the minor daughter and her 108-day non-consensual confinement in psychiatric wards to secure asset control. Arson (18 U.S.C. § 1961(1)(A)): Targeted firebombing of the Porsche vehicle (1999), cultural heritage site Villa Munz (2003, twice in 2023), and 1 residential house (2023).Extortion and Bribery (18 U.S.C. § 1961(1)(A)): Financial bribes demanded by the State Attorney (2000) and Court President (2002) to resolve manufactured judicial blockades. Wire and Mail Fraud (18 U.S.C. §§ 1341, 1343): Fabricating court cases in absentia post-2017, erasing three years of corporate records via Rijeka State Attorney's Office, and publishing a fraudulent public notice of Plaintiff's death to execute property theft. Interstate/Foreign Travel in Aid of Racketeering (18 U.S.C. § 1952): Cross-border

34

border interrogations, tire slashings, and coordinated physical and psychological terror targeting the household.

3. Treaty Violations and International Law Breaches Unlawful Expulsion (BIT Art. VIII): Administrative residency bans violated U.S.-Croatia BIT Article VIII investor guarantees, Article 12 ICCPR (freedom of movement), and Article 8 ECHR (private life) [Exhibit: Expulsion Letters].Systemic Discrimination (BIT Art. II(2)): Disproportionate tax/administrative actions and selective court blockades against foreign nationals violated Fair and Equal Treatment (FET), Article 26 ICCPR, and Article 14 ECHR [Exhibit M1-M8].Severe Torture and Physical Violence: Institutional abductions, severe beatings, and life-threatening intimidation trigger civil remedies under the violating Articles 5/9 ICCPR, Articles 3/5 ECHR, and UNCAT Articles 1/2 [Exhibit: Medical Records].State Cover-up and Asset Liquidation: The destruction of 4 investor companies and 12 capital assets by state attorney lines, along with an absolute failure to investigate reports, violates Article 2(3) ICCPR (effective remedy) and Article 1 Protocol 1 ECHR [Exhibit G, D, A, I, H.

4. Final Status and Active Judicial Blockade Forced Exile of U.S. Citizens: Coordinated state terror forced the permanent flight of the U.S. citizen heir, forcing total asset abandonment. Weaponized Arrest Warrants: Police and courts issued unsubstantiated arrest warrants on four separate occasions against the Plaintiff and minor daughter, remaining active solely to block access to this Court. Definitive Admission of Injury: Under UN Draft Articles on State Responsibility (Articles 2–3), the combination of these acts establishes full international state liability for the verified economic destruction of the covered investment.

35

COMPLAINT

MODULE I

DECLARATORY LEGAL PROTECTION

(Application for partial judgment – Module I)

This Module is purely a question of status and facts, independent of foreign court judgments,

and is therefore appropriate for declaratory legal protection.

During her absence, the Defendant brought a large number of court proceedings against the plaintiff without jurisdiction and falsified the plaintiff's addresses in order to be able to persist in the robbery of both property and blackmail on the signatures of the agreements, which are also in the court files. Each of the Plaintiff's legal appeals and procedural objections caused 3-4 new lawsuits. All lawsuits are based on abuse of the judiciary and judicial powers, and there is no need to interpret them in court. They are the cause of damage to the plaintiff here, and the cause of our leaving the Republic of Croatia and not returning to the Republic of Croatia.

Coercion to abandon movable property, capital property, personal belongings, works of art, and everything acquired, as well as discrimination, public shaming through public court bulletin

boards to which everyone has access to where all our data, confidential data, data from personal life, falsely made court documentation, defamation, false witness testimonies, false witnesses

and embezzlement of financial statements, land and commercial public data are publicly displayed.

Detailed Records I

36

| Number invoice | Damages | Hr number | Inter./penalty From date | Euro | Total USD. |
|---|---|---|---|---|---|
| 2025/009 | Invoiced GDPR | 02.10.2025 18:15 | 11.11.2025. | 13,425,250.82 | 15,539,729.80 |
| 2025/027 25-08 HR | GDPR other | 701-01/25-01/321 | 11.11.2025. | 390,482.38 | 451,941.97 |
| 2025/10 25-17 | GDPR other | 051/01/25-01/582 | 11.11.2025. | 73,040,674.40 | 84,537,827.65 |
| 2025/015 25-10 HR | Med. GDPR | 051/01/25-01/582 | 11.11.2025. | 81,214,100.00 | 94,072,657.75 |
| 2025/014 25/16 HR | false allegation | 051/01/25-01/582 | 11.11.2025. | 228,446,436.56 | 264,630,887.11 |
| 2025/015 A | Arbitration 1. Call | 06.10.2025. 12:22 | 11.11.2025. | 1,049,094,337.13 | 1,213,066,596.63 |
| 2025/10/004 25-07 HR | false allegation | 701-01/25-01/321 | 11.11.2025. | 26,000,000.00 | 30,095,000.00 |
| 2025/016 | GDPR other | 06.10.2025. 13:27 | 11.11.2025. | 2,837,060.00 | 3,286,243.55 |
| 2025/12 25-15 HR | false allegation | 051/01/25-01/582 | 11.11.2025. | 106,509,231.00 | 123,330,419.23 |
| 2015/009 25/11 HR | false allegation | 051/01/25-01/582 | 11.11.2025. | 29,435,764.32 | 34,083,083.88 |
| 2025/010 25-13 HR | false allegation | 051/01/25-01/582 | 11.11.2025. | 5,000,000.00 | 5,787,500.00 |

Total: $1,868,881,887.57 (One billion, eight hundred sixty-eight million, eight hundred eighty-one thousand, eight hundred eighty-seven dollars and fifty-seven cents).

All court proceedings are described and the number of the proceedings, as well as the reason for the damage, in the annex to the lawsuit. Each warning and announcement of

37

COMPLAINT

damage is clearly arranged by date. The year of the process is in the file designation. If necessary, the file will be further processed as the subject of the complaint.

Request for Partial Judgment – Module I, as applicable, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Plaintiff respectfully moves this Court to enter judgment in its favor:

The plaintiff requests that, after resolving Module I, the Court renders a partial or final judgment on liability in Module II, leaving the exact determination of the amount of damages if necessary.

The plaintiff asks that you rule in Her favor according to the total amount of $1,868,881,887.57 (One billion, eight hundred sixty-eight million, eight hundred eighty-one thousand, eight hundred eighty-seven dollars and fifty-seven cents ), and interest of 6%, a penalty of 15% from the date of notarial certification, and that the costs are fully borne by the defendant in the court proceedings, including travel, hotel and related daily allowances.

The money to be deposited into the account within 30 days under the threat of enforcement on the Defendant's property, without the right to enjoy immunity and abuse of immunity as protection for the purpose of abusing the same immunity against the Plaintiff. Furthermore, the Plaintiff respectfully requests that this Court enter a permanent anti-suit injunction and global property asset freeze against the Defendant, pursuant to the binding authority of the United States Supreme Court in Republic of Argentina v. NML Capital (2014).

The Defendant, including all its state ministries, courts, and appointed trustees, shall be strictly and permanently enjoined from initiating or pursuing any parallel domestic or foreign judicial proceedings designed to interfere with this Court's final judgment, and is strictly

prohibited from transferring, concealing, or encumbering any commercial sovereign assets globally to evade execution.

Plaintiff incorporates into Module I the expanded statements of account and official acknowledgments of receipt within the attached supplement, fully certified by the United States Notary Public.

39

MODULE II   MATERIAL AND NON-MATERIAL DAMAGE

(Application for partial judgment – Module II)

The plaintiff restates and incorporates paragraphs 1-14.

A. Material (Property) Damage as a direct and immediate result of the Defendant's actions, the Plaintiff suffered material damage, including, but not limited to:

- unlawful seizure or encumbrance of property;

- coerced or forced payments;

- loss of investment opportunities;

- obstruction of the Plaintiff's activities as a U.S. investor;

- costs, penalties and financial constraints.

The actions of the Defendant are:

appropriation,

unfair enrichment,

civil fraud,

violation of property and economic relations.

B. non-material damages the plaintiff also suffered non-pecuniary damage, including:

long-standing legal uncertainty,

reputational damage,

emotional distress,

violation of personal rights and dignity,

denial of the peaceful enjoyment of property.

40

Such damage was foreseeable, continuous and aggravated by the persistence of the Defendant after the existence of the Claimant was known or should have been known.

| Number invoice | Damages | Hr number | Inter./penalty From date | Euro | Total USD. |
|---|---|---|---|---|---|
| 2025/025 | Juridical error | 29.10.2025 14:15 | 11.11.2025. | 2,000,000.00 | 2,315,000.00 |
| 2025/001 25 -06 HR | BIT investment | 701-01/25- 01/321 | 11.11.2025. | 4,144,162.00 | 4,797,750.84 |
| 2025/020 25-17 | BIT Capital Damages | 06.10.2025. 16:18 | 11.11.2025. | 148,246,720.90 | 171,639,070.46 |
| 2025/007 25-09 HR | Violent trespass capital properties | 051/01/25- 01/582 | 11.11.2025. | 81,214,100.00 | 94,072,657.75 |

Total: $ 272,824,479.05 (Two hundred seventy-two million, eight hundred twenty-four thousand, four hundred seventy-nine dollars and five cents).

All court proceedings are described and the number of the proceedings, as well as the reason for the damage, in the annex to the lawsuit. Each warning and announcement of damage is clearly arranged by date. The year of the process is in the file designation. If necessary, the file will be further processed as the subject of the complaint.

Request for Partial Judgment – Module II, as applicable,

pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Plaintiff respectfully moves this Court to enter judgment in her favor:

41

COMPLAINT

The plaintiff requests that, after resolving Module I, the Court renders a partial or final judgment on liability in Module II, leaving the exact determination of the amount of damages if necessary. The plaintiff requests that you rule in her favor according to the total amount of USD 272,824,479.05 (Two hundred seventy-two million, eight hundred twenty-four thousand, four hundred seventy-nine dollars and five cents) and interest of 6%, a penalty of 15% from the date of notarization, and that the costs be borne in full by the defendant in the court proceedings, including travel, hotel and related daily allowances.

The money to be deposited into the account within 30 days under the threat of enforcement on the Defendant's property, without the right to enjoy immunity and abuse of immunity as protection for the purpose of abusing the same immunity against the Plaintiff. Furthermore, the Plaintiff respectfully requests that this Court enter a permanent anti-suit injunction and global property asset freeze against the Defendant, pursuant to the binding authority of the United States Supreme Court in Republic of Argentina v. NML Capital (2014). The Defendant, including all its state ministries, courts, and appointed trustees, shall be strictly and permanently enjoined from initiating or pursuing any parallel domestic or foreign judicial proceedings designed to interfere with this Court's final judgment, and is strictly prohibited from transferring, concealing, or encumbering any commercial sovereign assets globally to evade execution

COMPLAINT

MODULE III

ABUSE OF PROCEDURE, CONSPIRACY AND MISUSE OF INTELLECTUAL PROPERTY

(Application for partial judgment – Module III)

The plaintiff restates and includes paragraphs 1-20.

A. Abuse of Process and Conspiracy the Defendants knowingly used legal and administrative mechanisms for purposes for which they were not intended, including:

the implementation of obligations that they knew to be fictitious,

Taking advantage of the fictional status to exert pressure, holding proceedings despite the lack of a legal basis. Such conduct constitutes an abuse of process and, if coordinated, a civil conspiracy under U.S. common law.

B. Intellectual Property and Copyright Infringement the Defendants have also used, reproduced, adapted or relied upon the Plaintiff's copyrighted materials, legal construction, analyses or written submissions:

without authorization.

in a distorted or distorted form,

in a manner detrimental to the Plaintiff.

The Plaintiff retains the copyright and ownership rights to these works, and the Defendant's conduct constitutes appropriation and unlawful use. Here is the damage to the procedure for the payment of alimony that the court has evaded through a false power of attorney of a lawyer, burglary and illegal entry and use of possession that is to be calculated per day and per property in the value of 300 euros or 360 USD, according to the Austrian customary

43

COMPLAINT

calculation of the violation of possession. Until the payment of the property and compensation for the property in the duration and in force of collection.

Detailed Records III

| Number invoice | Damages | Hr number | Inter./penalty from date | Euro | Total USD. |
|---|---|---|---|---|---|
| 2025/027 25-09HR | Claim | 701-01/25-01/321 | 11.11.2025. | 390,482.38 | 451,941.97 |
| 2025/028 25 -06 HR | GDPR privacy | 701-01/25-01/321 | 11.11.2025. | 1,786372,80 | 2,067,981.54 |
| 2025/025 | Alimony | 02.10.2025. 15:53 | 11.11.2025. | 1,593,223.69 | 1,844,181.03 |
| 2025/011 25-14 HR | Violent trespass capital properties | 051/01/25-01/582 | 11.11.2025. | 65,717,437.58 | 76,081,405.08 |

Total:  $ 80,445,509.62 (Eighty million, four hundred forty-five thousand, five hundred nine dollars and sixty-two cents).

All court proceedings are described and the number of the proceedings, as well as the reason for the damage, in the annex to the lawsuit. Each warning and announcement of damage is clearly arranged by date. The year of the process is in the file designation. If necessary, the file will be further processed as the subject of the complaint.

Request for partial judgment — Module III Plaintiff respectfully moves this

Court to enter judgment in her favor:

44

COMPLAINT

Plaintiff requests that, after resolving Module III, as appropriate pursuant to Rule 54(b) of the Federal Rules of Civil Procedure regarding the use of family proceedings and alimony evasion

as tools of financial exhaustion and coercion

"The Defendant's deliberate evasion, obstruction, and weaponization of domestic family proceedings—specifically regarding the denial and evasion of lawful alimony and child support—were not isolated domestic matters, but rather integral components of a coordinated, predatory strategy. The Defendant knowingly and maliciously utilized the withholding of family funds and the weaponization of proceedings involving Plaintiff's children to inflict severe economic distress, eliminate the financial means of legal defense, and systematically wear down her resistance. This targeted financial exhaustion was executed with the clear and pre-meditated predatory intent to induce extreme duress upon the Plaintiff, thereby forcing the unlawful extortion, surrender, and coercive expropriation of her multi-billion-dollar commercial assets and intellectual property. Such conduct constitutes a textbook pattern of racketeering activity under the RICO Act, where legitimate judicial and administrative mechanisms were subverted into state-sponsored instruments of financial coercion and asset theft.

The court renders a partial or final judgment on liability in Module III, leaving the exact determination of the amount of damage as appropriate. The plaintiff asks you to rule in her favor according to the total amount of USD 80,445,509.62 (Eighty million, four hundred forty-five thousand, five hundred nine dollars and sixty-two cents) and interest of 6%, a penalty of 15% from the date of notarial certification, and that the costs are

fully borne by the defendant of the court proceedings, including travel, hotel and related daily allowances. The money to be deposited into the account within 30 days under the

45

threat of enforcement on the Defendant's property, without the right to enjoy immunity and abuse of immunity as protection for the purpose of abusing the same immunity against the Plaintiff. Furthermore, the Plaintiff respectfully requests that this Court enter a permanent anti-suit injunction and global property asset freeze against the Defendant, pursuant to the binding authority of the United States Supreme Court in Republic of Argentina v. NML Capital (2014). The Defendant, including all its state ministries, courts, and appointed trustees, shall be strictly and permanently enjoined from initiating or pursuing any parallel domestic or foreign judicial proceedings designed to interfere with this Court's final judgment, and is strictly prohibited from transferring, concealing, or encumbering any commercial sovereign assets globally to evade execution.

PRAYER FOR RELIEF WHEREFORE,

the Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief: Punitive Damages: Award punitive and exemplary damages against the Defendant for intentional, malicious, and egregious misconduct; Injunctive Relief: Grant a permanent injunction and necessary equitable remedies to restrain and prevent the Defendant from any further unauthorized use, misappropriation, or misuse of the Plaintiff's legal identity, name, likeness, and proprietary works; and Fees and Costs: Order the Defendant to pay all reasonable attorney's fees, litigation expenses, and court costs incurred herein, alongside any such other and further relief as this Court deems just, fair, and equitable. Respectfully submitted,

Date: May 19, 2026, in Eggenburg, Austria

_____ Plaintiff, Signature

D.I. Ljiljana Segedin, individually;

46

COMPLAINT

Note: This lawsuit does not seek a final capped amount. If the Defendant continues to cause damage after this filing, the claim for additional damages will be extended accordingly.

Note: Should the Court wish to review the content of any unlawful or invalid judgments, the Plaintiff can provide comprehensive documentation personally collected. This documentation demonstrates the receipt of notifications concerning damages, the exact amounts of damages suffered, the misapplication of jurisdiction by defendant authorities, and the systematic disregard of the Plaintiff's lawful submissions. These actions occurred continuously over the years, and the Plaintiff asserts that the claims and supporting evidence are not barred by any statute of limitations because the violations have been ongoing and cumulative. The documentation submitted reflects the actual, personal experience and records of the Plaintiff and has not been delivered to or recognized at the Plaintiff's actual residence.

PROPOSED EQUITABLE RELIEF AND INJUNCTIVE PROTECTION

Plaintiff respectfully requests that the Court grant, as an essential remedy in this matter, an immediate injunction and necessary equitable measures to ensure the full legal protection of the Plaintiff's identity, works, and covered investments against any further institutional overreach, bad-faith proceedings, or predatory actions by the Defendant.